**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LUKE E. DE LUNA, | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| v. | ) Case No. CIV-23-890-G |
| | ) |
| DAVID ROGERS, Interim Warden, | ) |
| Red Rock Correctional Center, | ) |
| | ) |
| **Respondent.[1]** | ) |

## ORDER

Petitioner Luke E. De Luna, a state prisoner appearing through counsel, filed an

Amended Petition for Writ of Habeas Corpus (Doc. No. 18) challenging his state-court

criminal conviction pursuant to 28 U.S.C. § 2254.  In accordance with 28 U.S.C. §

636(b)(1), the matter was referred to Magistrate Judge Amanda L. Maxfield for preliminary

review.

### I.    Relevant Background

As alleged in the Amended Petition and outlined in the Report and Recommendation

issued by Judge Maxfield ("R. & R.," Doc. No. 24), Petitioner challenges his 2021 felony

child abuse conviction in the District Court of Kiowa County, Oklahoma.  *See State v. De

Luna*, No. CF-2019-8 (Kiowa Cnty. Dist. Ct.).

In the state-court proceeding, Petitioner was charged with willfully or maliciously

using unreasonable force causing injury upon his infant son L.D. consistent with shaken

---

[1] The interim warden of Petitioner's current facility is hereby substituted as Respondent.
*See* Fed. R. Civ. P. 25(d), 81(a)(4).

baby syndrome or abusive head trauma, in violation of title 21, section 843.5(A) of the Oklahoma Statutes. *See* Am. Pet. at 5-6; Second Am. Info. (Doc. No. 23-1, at p. 121-22); J. & Sentence (Doc. No. 21-2) at 1-3. A jury found Petitioner guilty of the offense, and on July 7, 2021, the trial court sentenced Petitioner to a term of 30 years' imprisonment. *See* J. & Sentence at 1.[2]

Petitioner appealed to the Oklahoma Court of Criminal Appeals ("OCCA"). *See* *DeLuna v. State*, No. F-2021-745 (Okla. Crim. App.). On July 7, 2022, the OCCA affirmed the conviction and sentence. *See* OCCA Summ. Op. (Doc. No. 21-1).

Petitioner initiated this habeas proceeding on October 5, 2023, and now raises two claims for federal habeas corpus relief. *See* Am. Pet. at 14-18. Respondent, Interim Warden David Rogers, has filed an Answer (Doc. No. 21) arguing that the Amended Petition should be denied in its entirety.

## II.    *The Report and Recommendation*

On May 2, 2025, Judge Maxfield issued the Report and Recommendation addressing Petitioner's habeas request. In the R. & R., Judge Maxfield thoroughly outlined the procedural and factual history of this matter. *See* R. & R. at 1-7, 10-11. The magistrate judge recommended that the Court deny relief on both habeas claims. *See id.* at 10-25.

Petitioner timely filed an Objection (Doc. No. 27) to the R. & R. Respondent did not respond to the Objection. Pursuant to controlling authority, the Court reviews de novo

---

[2] Although the Judgment and Sentence states that Petitioner entered a guilty plea, the case record reflects that Petitioner was convicted and sentenced according to the jury's verdict.

the portions of the R. & R. to which specific objections have been made. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Having conducted this de novo review where appropriate, the Court finds as follows.

III.   *Discussion*

   A. *Petitioner's Claim for Violation of Due Process Under the Fourteenth Amendment*

      1. *The State-Court Proceedings*

As recounted in the R. & R., prior to trial the State filed a notice (commonly referred to as a *Burks* notice) of intent to offer evidence of Petitioner's alleged abuse of Tayia De Luna, his wife and the mother of L.D., both "to prove identity, opportunity, and lack of accident or mistake" and "as part of the *res gestae*" of the charges. State's Suppl. Notice (Doc. No. 21-6) at 3-4; *see Burks v. State*, 594 P.2d 771, 774-75 (Okla. Crim. App. 1979); Okla. Stat. tit. 12, § 2404(B). After an evidentiary hearing, the trial court allowed the evidence to be introduced. *See* Trial Ct. Mar. 10, 2021 Hr'g Tr. 18:13-30:19 (Doc. No. 21-5) (trial court concluding that the evidence could "come in under res gestae" as "it may explain why [Ms. De Luna] didn't report [Petitioner's abuse]"). At trial, evidence of Petitioner's mental and physical abuse of Ms. De Luna was presented via the testimony of Ms. De Luna and of Ronnie Webb, a child welfare worker. *See* Vol. II Trial Tr. 207:2-208:1, 305:12-306:21, 315:22-317:10 (Doc. No. 22-2); OCCA Summ. Op. at 5-6.

On direct appeal, Petitioner claimed that the trial court erred because the domestic-violence testimony was not properly admissible as section 2404(B) other-acts evidence or

as res gestae evidence.  *See* Appellant's Br. (Doc. No. 21-3) at 11-15.  The OCCA

summarized the disputed testimony and rejected this claim, stating:

> [Ms. De Luna's and Mr. Webb's] brief references to the relationship between [Petitioner] and his wife helped explain to the jury the chain of events that led [Petitioner] to sitting before them.  The evidence helped to show why, after L.D. was taken from [Petitioner] and his wife, [Petitioner] was not criminally charged with committing the abuse.  He was not criminally charged because the only person who had witnessed [Petitioner's] violent behavior, his wife, did not report the abuse because she was afraid of [Petitioner's] reaction if she reported it.
>
> The evidence also helped explain why, even though [Ms. De Luna] was concerned with [Petitioner's] behavior toward L.D., she did not report her concerns or attempt to get L.D. away from [Petitioner].  The evidence helped rebut defense claims that L.D.'s injuries were accidental and not abuse and explained why [Ms. De Luna] changed her opinion regarding whether [Petitioner] abused L.D.
>
> Having thoroughly reviewed the record, we find the challenged evidence was not improper evidence of other crimes but was properly admitted as *res gestae* of the charged offense.  Finding no error, we find no plain error and this proposition is denied.

OCCA Summ. Op. at 2-7.

### 2.  *The Report and Recommendation*

In his first claim for habeas relief, Petitioner argues that he was denied due process

and "the right to a fundamentally fair trial" due to the state court's admission of unduly

prejudicial evidence.  Am. Pet. at 13-14; *see also Ochoa v. Workman*, 669 F.3d 1130, 1144

(10th Cir. 2012) ("[W]hen a state court admits evidence that is 'so unduly prejudicial that

it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth

Amendment provides a mechanism for relief.'" (quoting *Payne v. Tennessee*, 501 U.S. 808,

825 (1991))).

The R. & R. recommended that relief be denied upon Petitioner's due process claim

on two alternative bases.  *See* R. & R. at 11-19.

### a.  Alternative One: Lack of Exhaustion and Anticipatory Procedural Bar

First, the R. & R. found that Petitioner, by presenting this claim to the OCCA as a violation of Oklahoma law, failed to exhaust available state-court remedies on the alleged violation of due process under the Fourteenth Amendment as required for habeas relief to issue.  *See* R. & R. at 11-14 (citing Appellant's Br. at 11-15); 28 U.S.C. § 2254(b)(1)(A).[3]

Petitioner objects to the finding of nonexhaustion, but as support he cites only the magistrate judge's separate finding that, *in the alternative*, Petitioner exhausted the claim and the OCCA addressed it on its merits.  *See* Pet'r's Obj. at 8-9 ("[T]he Magistrate's analysis of [Petitioner's] claim on the merits indicate that Petitioner's fundamental fairness

---

[3] In order to be heard in federal court on a petition for writ of habeas corpus, a state prisoner generally must have "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  As explained by the Tenth Circuit,

> To exhaust a claim, a state prisoner must pursue it through "one complete round of the State's established appellate review process," giving the state courts a "full and fair opportunity" to correct alleged constitutional errors.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  If a state prisoner has not properly exhausted state remedies, the federal courts ordinarily will not entertain an application for a writ of habeas corpus unless exhaustion would have been futile because either "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. §§ 2254(b)(1)(B)(i), (ii).

*Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (citation omitted); *see also Cash v. United States*, No. CIV-20-884-R, 2021 WL 666974, at *2 (W.D. Okla. Jan. 20, 2021) (R. & R.) ("To fully exhaust the claims in state court, the claims must have been presented to the state's highest court, the [OCCA]."), *adopted*, 2021 WL 666969 (W.D. Okla. Feb. 19, 2021).  Implicit in the R. & R.'s finding of nonexhaustion is a determination that the OCCA did not sua sponte reach the federal due process claim in disposing of Petitioner's appeal.  *See Alverson v. Workman*, 595 F.3d 1143, 1153 n.3 (10th Cir. 2010).

claim was exhausted."); R. & R. at 16-19. Petitioner's vague reference to a separate portion

of the R. & R. does not evince error in the relevant finding. *See generally Dickerson v.*

*Miller*, No. 22-CV-0074, 2025 WL 899344, at *11 (N.D. Okla. Mar. 24, 2025) ("[A]

petitioner must show that he presented the facts and law necessary to support his federal

claim in a manner sufficient to put the courts on notice of the federal constitutional claim.

[The petitioner's] reference to due process and fair trial in the issue statement of his state

appellate brief, followed by arguments grounded entirely in state law, was not sufficient to

fairly present a federal due process claim." (citation and internal quotation marks omitted)).

Petitioner does not address or challenge Judge Maxfield's further conclusion that:

assuming the claim was not raised on direct appeal, if Petitioner attempted to return to state

court to raise the claim, the claim would be found procedurally barred[4] and, therefore, the

Court should deem this claim procedurally defaulted for purposes of federal habeas corpus

due to application of an "anticipatory procedural bar." R. & R. at 11-15; *see Fontenot v.*

*Crow*, 4 F.4th 982, 1019 (10th Cir. 2021) (explaining that "in appropriate circumstances

the court can apply an 'anticipatory procedural bar' to functionally transform unexhausted

claims into exhausted ones"); *see also Dickerson*, 2025 WL 899344, at *11.[5]   The

---

[4] "A state prisoner's default of his federal claims in state court under an independent and adequate state procedural rule bars federal habeas review of those claims." *Finlayson v. Utah*, 6 F.4th 1235, 1238 (10th Cir. 2021). The Tenth Circuit has recognized that Oklahoma's bar on raising a claim for relief in a postconviction application that could have been raised on direct appeal is an independent and adequate state ground. *See, e.g., Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008).

[5] As explained in the R. & R., federal habeas review of this defaulted claim is precluded absent a showing by Petitioner of either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "a fundamental miscarriage of

undersigned discerns no error in this aspect of the R. & R. or in denial of relief on this basis.

> b.  *Alternative Two: The OCCA's Adjudication on the Merits*

Second, the R. & R. alternatively found that the OCCA's denial of relief constituted an "adjudicat[ion] on the merits" of the federal due process claim but that this adjudication did not "result[] in a decision that . . . involved an unreasonable application . . . of clearly established Federal law," as required for relief to issue.  28 U.S.C. § 2254(d)(1); *see* R. & R. at 16-19;[6] *see also* Appellant's Br. at 11, 14.  Pursuant to this standard, the federal habeas court may grant relief only if a state court "unreasonably applies" "the correct governing legal principle" of the Supreme Court's decisions to the facts of the petitioner's case.  *Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (internal quotation marks omitted).

> An unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the

justice" will result if the claims are not considered.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see* R. & R. at 15-16.

The magistrate judge found that there had been no showing of cause for the procedural default or of a fundamental miscarriage of justice absent consideration of the due process claim.  *See* R. & R. at 15-16.  Petitioner's Objection states: "[C]onsidering the totality of the facts [of] this case a showing of prejudice would invariably make a showing of cause unnecessary and thus the Magistrate's determination is objectively unreasonable considering what the Supreme Court has stated regarding fair trials."  Pet'r's Obj. at 10.  Although this sentence appears to allude to the R. & R.'s cause-and-prejudice finding, the Court is unable to discern any specific, reasoned objection therein.

[6] The R. & R. several times references the "contrary to" language of 28 U.S.C. § 2254(d)(1) while considering Petitioner's claims under the "unreasonable application" aspect of that statute.  *See* R. & R. at 18-19, 22, 24.  To the extent the R. & R. conflates these separate requirements or suggests that Petitioner must identify clearly established law contrary to the OCCA's holdings to order to obtain relief under § 2254(d)(1)'s "unreasonable application" standard, the undersigned has disregarded that reasoning and does not so evaluate Petitioner's habeas claims herein.

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Id.* (alteration and internal quotation marks omitted).

Petitioner purports to challenge the magistrate judge's § 2254(d)(1) determination, but he does not object in a "specific" manner as required to trigger de novo review. Fed. R. Civ. P. 72(b)(2), (3); *see 2121 E. 30th St.*, 73 F.3d at 1060 ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court."). Petitioner instead broadly asserts, without citation to supporting authority: "This Court, not the OCCA, could determine that the admission of the evidence regarding domestic violence was not harmless beyond a reasonable doubt. . . . [T]he Court must . . . consider the totality of the evidence to determine whether the admission of evidence was so unduly prejudicial." Pet'r's Obj. at 10-11. Petitioner also fails to address § 2254(d) or to recognize the high degree of deference that is owed to the state court's determination under that statute. *See id.*; *Harrington v. Richter*, 562 U.S. 86, 102-03, 105 (2011).

The Court nonetheless has reviewed the R. & R.'s determination de novo and finds no error. While the admission of evidence at a state criminal trial is ordinarily only a matter of state law, the Supreme Court has explained that "the Due Process Clause forbids the introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair." *Andrew v. White*, 604 U.S. 86, 96 (2025) (citing *Payne*, 501 U.S. at 825); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991). By reviewing for plain error, the OCCA "effectively evaluated fundamental fairness"; the Court therefore "must defer to its ruling"

8

under 28 U.S.C. § 2254(d)(1) unless the OCCA "unreasonably applied" the fundamental fairness test. *Patterson v. Harpe*, No. 18-CV-0153, 2025 WL 1908975, at \*4 (N.D. Okla. July 10, 2025); *Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (explaining that there is "no practical distinction between [the OCCA's] formulations of plain error" and "the federal due-process test").

The OCCA found that the evidence of Petitioner's domestic abuse was properly admitted as res gestae of the charged child-abuse offense. *See* OCCA Summ. Op. at 2-7.[7] As noted by the OCCA, the relevant testimony of Ms. De Luna and Mr. Webb, considered in the context of the entire trial record, was "brief, limited, and generally non-specific" in nature. OCCA Summ. Op. at 4-7, 9; *see* Vol. II Trial Tr. 207:2-208:1, 305:12-306:21, 315:22-317:10.[8] Further, there was ample evidence to support the jury's finding of Petitioner's guilt on the charged offense, including "testimony that [Petitioner] thought he did something to L.D." and the experts' finding that "the injuries [were] intentionally inflicted and evidence of abuse." OCCA Summ. Op. at 11; *see also* Answer at 10-16 (summarizing trial testimony and exhibits).

The undersigned concludes that the introduction of the domestic-abuse testimony "did not infect the trial with such unfairness as to deny [Petitioner] his Fourteenth

---

[7] "*Res gestae* are those things, events, and circumstances incidental to and surrounding a larger event that help explain it." *Vanderpool v. State*, 434 P.3d 318, 324 (Okla. Crim. App. 2018) (internal quotation marks omitted).

[8] Petitioner does not attempt to "rebut[] the presumption of correctness" afforded to the OCCA's factual findings or argue that the OCCA's disposition "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2), (e)(1).

Amendment right to due process." *Thornburg*, 422 F.3d at 1125.  The OCCA's rejection of this claim therefore did not unreasonably apply the fundamental-fairness test set forth by the Supreme Court.  *See id.*; *Andrew*, 604 U.S. at 96.  Petitioner is not entitled to relief under § 2254(d)(1).

### B. Petitioner's Claim of Ineffective Assistance of Counsel in Violation of the Sixth Amendment

#### 1. Relevant Standards

The Sixth Amendment prescribes: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986); *accord Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In *Strickland*, the Supreme Court set forth a two-pronged test to be applied to claims of ineffective assistance.  *See Harrington*, 562 U.S. at 92, 104-05.  First, a petitioner "must show that counsel's performance was deficient."  *Strickland*, 466 U.S. at 687.  To satisfy this prong, Petitioner must show that his attorney's conduct was "outside the wide range of professionally competent assistance."  *Id.* at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").  With respect to the second prong of the analysis, Petitioner must demonstrate prejudice by showing that "but for counsel's unprofessional errors," "there is a reasonable probability that . . . the

10

result of the proceeding would have been different." *Id.* at 694.

Because the OCCA applied *Strickland* to deny Petitioner's ineffective-assistance-of-trial-counsel claim on the merits, this Court reviews the OCCA's decision under 28 U.S.C. § 2254(d)(1) "to determine whether or not it applied *Strickland* in an objectively reasonable manner." *Spears v. Mullin*, 343 F.3d 1215, 1248 (10th Cir. 2003); *see* OCCA Summ. Op. at 7-8. When the "highly deferential" standard of *Strickland* is applied in tandem with the "highly deferential" standard of § 2254(d), the resulting review is "doubly" deferential. *Harrington*, 562 U.S. at 105 (internal quotation marks omitted).

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*

### 2. The OCCA's Adjudication of the Ineffective-Assistance Claim

In seeking habeas relief, Petitioner presents several reasons his defense counsel was allegedly ineffective. *See* Am. Pet. at 15-18. Petitioner first raised this claim on direct appeal. *See* Appellant's Br. at 16-20. The OCCA denied relief, stating:

> In Proposition II, [Petitioner] claims counsel was ineffective for failing to object to the "*Burks* evidence[.]" He also argues counsel was ineffective for failing to object to "irrelevant and unduly prejudicial evidence testified to by [Ms. De Luna] and [Mr. Webb]"; specifically, referring to testimony about L.D.'s placement in the DHS system, [Ms. De Luna's] parental rights to a child she bore during the pendency of [Petitioner's] case ([who] was not [Petitioner's] child), whether [Ms. De Luna] voluntarily chose to terminate her parental rights and the implications of that choice, and whether [Petitioner] and [Ms. De Luna] were requested to get a divorce.
>
>      . . . .

11

As addressed in Proposition I, the evidence contained in the *Burks* notice of domestic abuse between [Petitioner] and his wife was properly admitted as *res gestae* of the charged offense of child abuse by injury. Defense counsel vigorously objected to admission of the evidence in the pre-trial hearing, but having been overruled did not raise any objections at trial to the evidence.

Based on the court's pre-trial ruling, any objection raised subsequently at trial would have been denied. Trial counsel will not be found ineffective for failing to raise an objection that would have been overruled. *Eizember* [*v. State*, 164 P.3d 208, 244 (Okla. Crim. App. 2007)].

Further, the record indicates the omission of objections was a strategic move. In the instruction conference, defense counsel objected to the State's proposed limiting instruction on other crimes evidence. The ensuing discussion showed that defense counsel did not think the State had actually offered any evidence of domestic violence and did not want a limiting instruction.

Not wanting to emphasize evidence of domestic violence between [Petitioner] and his wife was a sound strategic move by defense counsel. The references to domestic violence were brief, limited, and generally non-specific. In the context of the trial, raising an objection, with its ensuing discussion, would have drawn more attention to the testimony than it garnered otherwise. There are many ways to defend a criminal case, and our review of counsel's performance is deferential to informed strategic choices. *Strickland*, 466 U.S. at 489. This Court will not second-guess matters concerning trial strategy if there is a reasonable basis for counsel's actions. *Lee* [*v. Oklahoma*, 422 P.3d 782, 786 (Okla. Crim. App. 2018)]. As long as the choices are informed ones, counsel's decision to pursue one strategy over others is virtually unchallengeable. *Id.* That the strategy ultimately proved unsuccessful is not grounds for branding counsel ineffective. *Id.* Here, counsel's attempt to minimize potentially prejudicial evidence was reasonable trial strategy.

Regarding the absence of objections to testimony about L.D.'s placement in the DHS system, [Ms. De Luna's] parental rights, and whether she was forced to file for divorce, counsel's conduct again appears to be strategic. Defense counsel used this evidence to challenge [Ms. De Luna's] credibility by showing her bias or prejudice. Defense counsel attempted to show that [Ms. De Luna] only testified against [Petitioner] to avoid losing custody of the new baby.

The record indicates that defense counsel intentionally did not raise objections to evidence appellate counsel calls irrelevant and prejudicial because he wanted to use it as impeachment evidence. "We consider counsels' choices from their perspective at the time, and give great deference to counsels' decisions[."] *Martinez* [*v. State*, 371 P.3d 1100, 1117 (Okla. Crim. App. 2016)]. "We presume counsels' conduct is professional and their actions are the product of a reasonable trial strategy[."] *Id.*

Further, [Petitioner] has failed to show a reasonable probability that but for counsel's failure to raise objections appellate counsel deems appropriate, the result of his trial would have been different. The jury heard testimony that [Petitioner] thought he did something to L.D. because it had to be either him or his wife, and that he did not believe his wife could have caused the injuries. [Petitioner] never specifically blamed his wife for the injuries but argued the injuries were accidental or not abuse. The experts disagreed, finding the injuries intentionally inflicted and evidence of abuse. In the face of this evidence, counsel did the best he could by challenging the credibility of the only other primary caregiver. [Petitioner] has failed to show how he was prejudiced by counsel's failure to object to admissible evidence.

Having thoroughly reviewed [Petitioner's] claim of ineffectiveness and defense counsel's performance, we find [Petitioner] has failed to show either prejudice or deficient performance. This proposition is denied.

OCCA Summ. Op. at 7-12 (citation omitted).

### 3. *The Report and Recommendation*

Noting the Court's "starting assumption" "'that an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct might have been part of a sound trial strategy,'" the R. & R. reasoned:

The record supports the OCCA's conclusion that defense counsel's decision not to object was in furtherance of a strategy he previewed in his opening statement — to discredit Ms. De Luna by portraying her decision to initiate divorce proceedings as motivated by a desire to retain custody of her youngest child, implying her bias against Petitioner. (Tr. Vol. II, at 42). The challenged testimony, therefore, has "a double-edged nature," and counsel is free to "concede to, or admit, unflattering or even incriminating facts as part of an effective trial strategy." *Meek v. Martin*, 74 F.4th 1223, 1268 (10th Cir. 2023) (collecting cases). As for prejudice, the record likewise supports

13

the OCCA's conclusion that there is no reasonable probability that Petitioner would have been acquitted had counsel objected. The jury heard ample testimony about the time Petitioner was alone with L.D. and about his violent reactions to the baby crying. The jury heard that Petitioner was L.D.'s primary caregiver while Ms. De Luna was working long hours and that Petitioner became frustrated when the baby cried, causing him to slam his head against the wall and throw things. (Tr. Vol. II, at 48, 165-66, 264-65).

R. & R. at 24-25 (emphasis omitted) (quoting *Bullock v. Carver*, 297 F.3d at 1046 (10th Cir. 2002)). Judge Maxfield therefore concluded that the OCCA did not unreasonably apply *Strickland* in rejecting Petitioner's Sixth Amendment claim and recommended that relief be denied. *See id.* at 25.

Petitioner nominally objects to this aspect of the R. & R., asserting that he "believes he has met his burden to establish prejudice from counsel's deficient performance." Pet'r's Obj. at 11. The remainder of Petitioner's objection, however, consists of discussion of the cause-and-prejudice standard (which is not germane to this claim) and a verbatim repetition of the ineffective-assistance allegations presented in the Amended Petition and addressed in the R. & R. *Compare* Pet'r's Obj. at 11-15, *with* Am. Pet. at 15-18. The Objection fails to allege any error in either Judge Maxfield's thorough analysis or the OCCA's detailed application of *Strickland* on direct appeal. Accordingly, Petitioner has not shown that the OCCA's decision "involved an unreasonable application of" *Strickland*, and he is not entitled to federal habeas relief. 28 U.S.C. § 2254(d)(1); *see Spears*, 343 F.3d at 1248.

### CONCLUSION

IT IS THEREFORE ORDERED that the Report and Recommendation (Doc. No. 24) is ADOPTED as modified. The Amended Petition for Writ of Habeas Corpus (Doc. No. 18) is DENIED. A separate judgment shall be entered.

14

Petitioner's counsel's Motion to Withdraw (Doc. No. 28) is GRANTED.

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to a petitioner.  A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Further, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

Upon review, the Court concludes that the requisite standard is not met in this case. Thus, a certificate of appealability is DENIED.

IT IS SO ORDERED this 20th day of March, 2026.

_____
CHARLES B. GOODWIN
United States District Judge

15